MATTHEW H. WEINER (SBN 236394)
**PIERSON FERDINAND LLP**
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone:  415.915.4415
Facsimile:   415.890.4845
*matthewweiner@pierferd.com*

Attorneys for Plaintiffs
NEWTON AC/DC FUND L.P., PATAGON MANAGEMENT, LLC
SCALLION TRADING LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Newton AC/DC Fund, L.P., Patagon Management LLC, and Scallion Trading Ltd., on behalf of all other similarly situated Plaintiffs, <br><br> Plaintiffs, <br><br> v. <br><br> Maxim Ermilov, <br><br> Defendant, <br><br> and <br><br> Circle Internet Financial, LLC, <br><br> Relief Defendant. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Civil Action No. _____ |

Plaintiffs Newton AC/DC Fund, L.P. (the "Fund"), Patagon Management LLC ("Patagon"), Scallion Trading Ltd. ("Scallion," and together with the Fund and Patagon, the "Named Plaintiffs"),  individually and on behalf of all other similarly situated class members, by way of Complaint against Maxim Ermilov, alleges as follows:

### NATURE OF THE ACTION

1.    This dispute arises from Ermilov's breach of an agreement with investors. Pursuant to this agreement, Ermilov sold cryptocurrency tokens in exchange for the right to

1

receive millions of dollars of digital assets.  Plaintiffs bought cryptocurrency from Ermilov, who absconded with the assets instead of letting investors collect them.

2.    Ermilov created a cryptocurrency called Overnight (often abbreviated as "OVN") and advertised its public sale beginning in September 2023.  He sold OVN tokens to investors with the promise that each could confer fractional ownership of millions of dollars' worth of communal assets.  Instead, Ermilov diverted the bulk of the communal assets for himself.

3.    Ermilov's theft has harmed the Named Plaintiffs, who together hold approximately 55,000 OVN tokens, as well as a class of plaintiffs who own more than 91% of the outstanding OVN tokens.  As the owners of those tokens, Ermilov promised Plaintiffs a pro rata share of control over digital assets worth more than $15 million.  Instead, however, Ermilov has kept the money for himself and given zero to the investors.

4.    More than $12.5 million worth of these assets are in the form of cryptocurrency called a stablecoin that Circle Internet Financial, LLC ("Circle") issued.  Circle has the power to freeze those assets so that Ermilov cannot spend or hide them.

## PARTIES

5.    The Fund is a Delaware limited partnership with partners who are domiciliaries of Florida and Massachusetts.

6.    Patagon is a Delaware limited liability company, with a principal place of business in New York.

7.    Scallion is a corporation organized under the laws of England and Wales with a principal place of business in England.

8.    The proposed Class consists of all people and entities who currently hold OVN cryptocurrency tokens, excluding Ermilov and any of his co-conspirators yet to be discovered.  There are likely hundreds of people and entities within this Class definition.  Over 20,000 cryptocurrency wallets hold OVN tokens on one blockchain alone.

2

9.    Upon information and belief, Ermilov is a Russian national who resided in Russia as recently as late 2021 and has claimed on social media to reside in Abu Dhabi, United Arab Emirates.

10.    Circle is a Delaware limited liability company with a principal place of business in Massachusetts.  Upon information and belief, its sole member is a Delaware corporation whose principal place of business is in New York.

## JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(C) because at least one class member is a citizen of a State and the defendant is a foreign resident and the amount in controversy exceeds $5 million.

12.    The Court has personal jurisdiction over Ermilov because he transacted business and maintained substantial contacts in the Northern District of California.  Further, Ermilov's actions were directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including the Northern District of California.

13.    The Court has personal jurisdiction over Circle because it is a necessary party to be joined pursuant to Fed. R. Civ. P. 19(a)(1)(A) and will be served with a summons pursuant to Fed. R. Civ. P. 4(k)(1)(B).

14.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Ermilov is deemed to reside in any judicial district in which he is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

**I.    Ermilov Created Cryptocurrencies**

15.    This dispute concerns cryptocurrencies Ermilov created.

16.    Unlike traditional assets, cryptocurrency tokens are not controlled by any financial institution or government, and there are no physical tokens. Rather, cryptocurrency tokens exist on a publicly available ledger known as a blockchain that provides an immutable record of every transaction to have ever taken place with that type of token. The records contained on the blockchain provide verification of the amount of tokens each user is entitled to, as well as their transactions with other users.

17.    Holders of tokens can transmit their tokens electronically by sharing public addresses on the blockchain. These addresses, also called wallets, are represented by a string of numbers and letters (e.g., 0x1e0cc1f86df03B435E92f852DD675AD35659D7C1) and can be loosely thought of as a bank account. Unlike traditional bank accounts, however, all transactions to and from a given wallet can be viewed on the public blockchain.

18.    Just like cash can be kept in a purse, a home safe, or in a bank vault, cryptocurrency can be kept in different types of wallets.

## II.    Ermilov Created a Cryptocurrency Called USD+ and He Created OVN

19.    Ermilov created a cryptocurrency platform called Overnight Finance. This platform allowed users to invest in various cryptocurrencies in a manner similar to buying shares in a money market mutual fund.

20.    Ermilov solicited investments by selling a type of cryptocurrency called a stablecoin. Stablecoins are cryptocurrency tokens that are designed to have a stable value because they can always be redeemed for an underlying asset. The potential for on demand redemption keeps the value of the stablecoin steady at the value of the underlying asset.

21.    The stablecoin Ermilov sold was called USD+. He sold USD+ tokens for the price of one USDC token each. USDC is another stablecoin issued by Circle and its value is kept at one dollar since Circle allows users to redeem USDC tokens for U.S. dollars. Ermilov

promised that, while USD+ was a stablecoin whose value would stay constant at one dollar, that users who held USD+ tokens would receive investment returns similar to interest.

22.    Ermilov invested the USDC tokens users provided to purchase USD+ tokens and profits exceeding $15 million.  Ermilov kept those proceeds in several wallets that he publicly disclosed (collectively, the "Treasury").  He used Treasury assets to pay the returns he promised to USD+ tokenholders, and he also commingled his own funds with Treasury assets.

**III.    Ermilov Marketed and Sold OVN Tokens With The Express Promise that Tokens Conferred Ownership of the Treasury**

23.    Ermilov also created OVN, another cryptocurrency.  Unlike USD+ tokens, OVN tokens themselves could not be automatically redeemed for USDC tokens and did not generate the same investment returns as USD+ tokens.

24.    Ermilov promoted and sold OVN tokens by expressly promising that purchasers would obtain rights to a distribution of profits held in the Treasury.  In particular, he promised that OVN tokens were "governance" tokens that conferred upon purchasers the right to vote on what to do with Treasury assets.

25.    On November 6, 2024, Ermilov wrote on Discord that, "you can buy 51% of OVNs and vote to have [the Treasury] distributed."

26.    Ermilov made other statements consistent with the representation that OVN tokens were worth a share of the Treasury.  For example, on April 10, 2024, he wrote, "Sustainable growth of [the Treasury] is the only way for us to keep growing OVN price," meaning that growth in the Treasury was correlated with a corresponding increase in the price of OVN tokens.

27.    Ermilov was also clear what assets were included in the Treasury.  He referred to those assets as "POL" or "protocol owned liquidity."  This refers in the cryptocurrency industry to the assets a cryptocurrency platform holds for use in transactions with users, including for

use in providing returns to cryptocurrency investors.  He disclosed that the Treasury assets were kept in the following wallets:

- 0x898137400867603e6d713cbd40881dd0c79e47cb;

- 0xf02d9f19060ee2dd50047dc6e1e9ebac9ba436fe;

- 0x784cf4b62655486b405eb76731885cc9ed56f42f;

- 0xe497285e466227f4e8648209e34b465daa1f90a0; and

- 0x9030d5c596d636eefc8f0ad7b2788ae7e9ef3d46.

28.    He also wrote on the "Tokenomics" page on the website that promoted the OVN tokens that, "the revenue generated from seeding liquidity and insurance staking [his investment activities with investor funds] would be included into the protocol's revenue [the Treasury] and treated as such."  An archived version of this webpage is available here: https://web.archive.org/web/20231210230214/https:/docs.overnight.fi/governance/ovn-token/overnight-tokenomics

**IV.    Ermilov Sold OVN Tokens in California**

29.    Ermilov focused his efforts to sell OVN tokens in California.  Upon information and belief, he executed an agreement in December 2021 with Hack VC Management LLC ("Hack VC"), a venture capital firm headquartered in Palo Alto, California, to develop and promote OVN tokens.  Pursuant to that agreement, Hack VC was the lead investor in an $850,000 capital raise for the development and marketing of the OVN tokens.

30.    Additionally, Ermilov appeared on at least one podcast in May 2022, and one live event in or about May 2024, organized by Hack VC to promise the sale of OVN tokens.

**V.    The Named Plaintiffs Own Approximately 55,000 OVN Tokens**

31.    The Named Plaintiffs together own approximately 55,000 OVN tokens, which is more than 5.5% of all existing OVN tokens.  The Fund owns approximately 30,000 OVN

tokens.  Patagon owns approximately 22,000 OVN tokens.  Scallion owns approximately 3,700 OVN tokens.

32.   The Plaintiffs purchased their OVN tokens directly from a system that Ermilov created for the sale of OVN tokens.  Specifically, Ermilov created a piece of software called a smart contract on each of the Base and Optimism blockchains on September 19 and 20, 2023, with the addresses 0x61366A4e6b1DB1b85DD701f2f4BFa275EF271197 and 0x844d7d2fca6786be7de6721aabdff6957ace73a0, respectively.  Ermilov deposited approximately 23,000 OVN tokens into the two smart contracts.  A smart contract is a computer program stored in code on the blockchain that can also hold cryptocurrency.  Investors use the smart contract to purchase OVN tokens.

**VI.   Ermilov Breached the Agreement and Stole Treasury Assets**

33.   The Plaintiffs as a class own the vast majority of OVN tokens.  The pro rata share of the OVN Treasury that those tokens represent exceeds $5 million.   Some class members participated in a vote this month to distribute the Treasury assets (the "Proposal").  The voting window on the Proposal opened on May 4, 2026.  The vote reached a quorum on May 11, 2026 at 6:38 am Pacific Time, when OVN token holders who hold a majority of the total supply of OVN tokens voted on the Proposal.  As of this filing, the vote is unanimously in favor of the Proposal.  Thus, the Proposal will be successful, even though the voting window remains open until June 3, 2026.  By early morning on May 11, 2026, Pacific Time, more than half of the outstanding amount of OVN tokens had voted in favor of a proposition to liquidate the POL and distribute to OVN tokenholders, with no tokens voting against.

34.   In response to the vote, Ermilov repudiated his previous representations that the OVN tokenholders could vote to distribute the POL to themselves on a pro rata basis.  Just before the vote crossed the 50% threshold on May 11, 2026, someone withdrew Treasury assets.  Upon information and belief, it was Ermilov who transferred Treasury assets transfers to put

them out of reach of the OVN tokenholders who had voted to distribute them.  In all, Ermilov moved over $15.77 million in assets out of the Treasury wallets into a newly created wallet (the "New Wallet") at the following address:   0xf7fcc767de537953b3519d4b3097a24a6dfe1c84.  These assets include roughly 12.5 million USDC tokens, 91,000 USDT tokens, 20.32 WETH tokens, and 15.81 wrapped BTC tokens.

35.    Of these assets, roughly $14 million worth were bridged to the Ethereum blockchain, and the vast majority of those assets were deposited in three separate smart contracts deployed and managed by the Zama protocol, which were designed to enhance secrecy and allow for confidential transfers to other wallets. One of these Zama smart contracts (the "Zama Wallet") received a deposit of approximately 12.5 million USDC tokens from the New Wallet. The Zama Wallet has the following address on the Ethereum blockchain: 0xe978F22157048E5DB8E5d07971376e86671672B2.

36.    Upon information and belief, Ermilov is responsible for these transfers, and controls the New Wallet.

37.    The value of the OVN tokens held by the Plaintiffs has fallen substantially because the tokens used to reflect the pro rata ownership of a large Treasury, but after Ermilov stole from the Treasury, the tokens reflect a pro rata ownership of a much smaller Treasury.

38.    Ermilov acknowledged his misconduct.  Ermilov wrote in a May 14, 2026, Discord post that, "a group of people took control of 50+% of OVNs, so they control the protocol now."  In the same post, he admitted that he "told [investors] to get to 51%" to "drive the price [of OVN tokens] up to 7-10 USD."  But now that investors had done so, Ermilov stated that investors are not entitled to the Treasury assets.

39.    Even though Ermilov deposited the Treasury's USDC tokens in the Zama Wallet, Circle can freeze them.  This is because Circle "has the ability to block individual addresses

from sending and receiving" USDC and will do so to comply with a court order, pursuant to its blacklisting policy.

## VII.    Class Allegations

40.    The Fund brings this action as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of itself and all other holders of OVN tokens (the "Class").  Excluded from the Class is Ermilov and any of his co-conspirators yet to be discovered.

41.    This action satisfies the requirements of Fed. R. Civ. P. 23 and is properly maintained as a class action.

42.    The proposed Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Likely hundreds of people and entities hold OVN tokens in over 20,000 wallets on the Base blockchain alone.

43.    There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual Class member.  The damages sustained by the Plaintiffs flow from the common nucleus of operative facts surrounding Ermilov's theft of the Treasury.  The common questions of law and fact include, without limitation:

    a.    Whether an agreement existed between Ermilov and OVN tokenholders;

    b.    Whether Ermilov's refusal to permit tokenholders to redeem Treasury assets breached that agreement; and

    c.    The identity of the Treasury assets to which OVN tokenholders are entitled.

44.    The Fund's claims are typical of the claims of the Class since each Class member suffers the same reduction in value of their OVN tokens as a result of Ermilov's theft.  Equitable relief is necessary for the Fund and for all Class members to address the injury they sustained arising from Ermilov's theft of the Treasury.  The Fund is advancing the same claims and legal theories on behalf of itself and all similarly situated Class members.

9

45.    The Fund has no relevant interests adverse or antagonistic to the interests of other members of the Class.

46.    The Fund will fairly and adequately represent and protect the interests of the Class and have retained experienced counsel who is qualified to pursue this litigation and who is competent in the prosecution of class action litigation.

47.    A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.  The Fund does not anticipate that unusual difficulties will be encountered in the management of this class action.

48.    A class action will permit a large number of similarly situated people and entities to prosecute their common claims in a single forum, simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender, or the inconsistency in results that might occur if the claims were litigated independently.

49.    By refusing to recognize the contract rights held by OVN holders, Ermilov is acting on grounds generally applicable to the entire Class, thereby making Class-wide relief appropriate.

### COUNT I:  FRAUDULENT TRANSFER PURSUANT TO SECTION 3439.04 OF THE CALIFORNIA UNIFORM VOIDABLE TRANSFERS ACT AGAINST ERMILOV

50.    The Plaintiffs hereby restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

51.    Ermilov transferred assets away from the Treasury to separate wallets he controlled.

52.    Ermilov transferred the Treasury assets with the intent to hinder, delay, or defraud the Plaintiffs.  His intent is apparent because Ermilov transferred substantially all Treasury assets away from wallets controlled by the Overnight Finance protocol to wallets controlled by him alone, deposited the assets in Zama smart contracts designed for confidential transfers,

controls the Treasury assets in the Zama smart contracts, and moved the assets mere hours before a vote on the Proposal reached a quorum.

WHEREFORE, the Class seeks a judgment against Ermilov awarding the Plaintiffs their expectation damages, including pre- and post-judgment interest. It also seeks a declaration that this action is properly maintained as a class action, certifying the Named Plaintiffs as Class representatives, and appointing William Newman Lawyer PLLC as Class counsel. And it seeks such other and further relief as the Court deems just.

**COUNT II:  BREACH OF CONTRACT**
**AGAINST ERMILOV**

53.    The Plaintiffs hereby restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

54.    Ermilov entered into an agreement with tokenholders like the Plaintiffs, whose terms he published in promotional materials online. Pursuant to that agreement, Ermilov offered to sell OVN tokens. In exchange, he promised that purchasers of those tokens would obtain, among other things, a pro rata portion of the Treasury and also revenue from OVN transaction fees.

55.    The Plaintiffs complied with their contract obligations.

56.    Ermilov breached the agreement. He did not confer pro rata ownership over Treasury assets and, instead, absconded with Treasury assets.

57.    As a proximate cause of Ermilov's breach, the Plaintiffs suffered damages. They have failed to receive the benefit of their investment, which is far less valuable than Ermilov had advertised.

WHEREFORE, the Class seeks a judgment against Ermilov awarding the Plaintiffs their expectation damages, including pre- and post-judgment interest. It also seeks a declaration that this action is properly maintained as a class action, certifying the Named Plaintiffs as Class

representatives, and appointing William Newman Lawyer PLLC as Class counsel.  And it seeks such other and further relief as the Court deems just.

Dated: Palo Alto, California
May 28, 2026

**PIERSON FERDINAND LLP**

/s/ Matthew H. Weiner

Matthew H. Weiner
SBN 236394
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone: 415.915.4415
Facsimile: 415.890.4845
*matthewweiner@pierferd.com*

**WILL NEWMAN LAWYER PLLC**

/s/ William H. Newman

William H. Newman
 (*pro hac vice* motion forthcoming)
Tara Q. Higgins
(*pro hac vice* motion forthcoming)
33 Nassau Avenue, Second Floor
Brooklyn, New York 11222
Phone: (718) 218-3360
Email: will@willnewmanlawyer.com
        tara@willnewmanlawyer.com

*Attorneys for the Fund and
Proposed Class Counsel*