MATTHEW H. WEINER (SBN 236394)
**PIERSON FERDINAND LLP**
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone:  415.915.4415
Facsimile:   415.890.4845
*matthewweiner@pierferd.com*

Attorneys for Plaintiffs
NEWTON AC/DC FUND L.P., PATAGON MANAGEMENT, LLC
SCALLION TRADING LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Newton AC/DC Fund, L.P., Patagon Management LLC, and Scallion Trading Ltd., on behalf of all other similarly situated Plaintiffs, <br><br> Plaintiffs, <br> v. <br><br> Maxim Ermilov, <br><br> Defendant, <br><br> and <br><br> Circle Internet Financial, LLC, <br><br> Relief Defendant. | Civil Action No. **5:26-cv-05055** <br><br> PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ALTERNATIVE SERVICE |

## PLAINTIFFS' MOTION FOR
## A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ALTERNATIVE SERVICE

1

Table of Contents

*INTRODUCTION* ...............................................................................................................*1*

*FACTUAL BACKGROUND*................................................................................................*1*

   **A.**        **Ermilov Created a Cryptocurrency Called USD+ and He Created OVN** .....**2**

   **B.**        **Ermilov Made an Agreement With Investors to Sell OVN** .............................**3**

   **C.**        **Ermilov Breached the Agreement and Stole Treasury Assets** ........................**4**

   **D.**        **Ermilov Tried to Hide Assets in the Zama Platform, But Circle Can Still Block Most of Them** .......................................................................................................**5**

*ARGUMENT* ......................................................................................................................**6**

**I.**     *The Plaintiffs Meet the Requirements for a Temporary Restraining Order and a Preliminary Injunction*     **7**

   **A.**        **The Plaintiffs Are Likely to Succeed on the Merits** ........................................**7**

      **1.**         Fraudulent Transfer ......................................................................................**8**

      **2.**         Breach of Contract .......................................................................................**9**

   **B.**        **Plaintiffs will suffer irreparable harm absent relief** .....................................**10**

   **C.**        **The Balance of Equities Favors a Temporary Restraining Order** ...............**11**

   **D.**        **Public Interest Favors a Temporary Restraining Order**................................**12**

**II.**    *Fed. R. Civ. P. 65 Permits a Temporary Restraining Order Without Notice*     **13**

**III.**   *This Court Should Permit Alternative Means To Serve Defendant Ermilov*     **13**

**IV.**   *This Court Should Not Require The Named Plaintiffs to Post a Bond*     **14**

*CONCLUSION*.................................................................................................................*15*

## TABLE OF AUTHORITIES

**CASES**

*Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................................9

*Astrove v. Doe*, 2022 U.S. Dist. LEXIS 129067 (S.D. Fla. June 17, 2022) ..............................13

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)........................................................16

*Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*,
  584 F.2d 308 (9th Cir. 1978)....................................................................................................9

*Bullock v. Doe,* 2023 U.S. Dist. LEXIS 234778 (N.D. Iowa Nov. 3, 2023) ........................7, 14

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003) .........16

*Fed. Trade Comm'n v. Dluca*, 2018 U.S. Dist. LEXIS 237844 (S.D. Fla. Feb. 28, 2018) .......12

*Fid. Nat'l Title Ins. Co. v. Castle*,
  2011 U.S. Dist. LEXIS 135316 (N.D. Cal. Nov. 23, 2011)....................................................12

*Filip v. Bucurenciu*, 129 Cal. App. 4th 825 (Cal. Ct. App. 2005).............................................10

*GSV Futures LLC v. Casmain L.P.*,
  2022 U.S. Dist. LEXIS 205413 (N.D. Cal. Nov. 10, 2022)....................................................16

*Heissenberg v. Doe*, No. 2021 U.S. Dist. LEXIS 257218 (S.D. Fla. Apr. 22, 2021)................12

*Jacobo v. Doe*, 2022 U.S. Dist. LEXIS 101504 (E.D. Cal. June 7, 2022) ...................12, 13, 14

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) ...............................................................16

*Koller v. Brown*, 224 F. Supp. 3d 871 (N.D. Cal. 2016) .............................................................9

*Lagemann v. Spence*, 2019 U.S. Dist. LEXIS 171887 (S.D.N.Y. Jan. 24, 2019) .....................12

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).................................................................9

*Lo v. Lee*, 24 Cal. App. 5th 1065 (Cal. Ct. App. 2018)..............................................................10

*Newton AC/DC Fund, L.P. v. Circle Internet Financial, LLC*,
  Index No. 654157/2025, NYSCEF Doc. No. 10, (N.Y. Cty. July 16, 2025).....................7, 14

*Perez v. Wolf*, 445 F. Supp. 3d 275 (N.D. Cal. 2020) ................................................................9

*Potter v. All. United Ins. Co.*, 37 Cal. App. 5th 894 (Cal. Ct. App. 2019)................................10

*Ramales v. McCartney*, 2024 U.S. Dist. LEXIS 167412 (N.D. Cal. Aug. 23, 2024)................16

*Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126 (9th Cir. 2006)...........................................15

*Sanger v. Ahe Ahn*, 2019 U.S. Dist. LEXIS 178473 (N.D. Cal. Oct. 15, 2019) .......................10

*Smith v. Wells Fargo Bank, N.A.*, 809 F. Supp. 3d 922 (N.D. Cal. 2025)..................................11

*Twitch Interactive, Inc. v. Fishwoodco Gmbh*,
  2022 U.S. Dist. LEXIS 207109 (N.D. Cal. Nov. 15, 2022)....................................................16

*Univ. of Tex. v. Camenisch*,  451 U.S. 390 (1981) .....................................................................9

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ...................................................................................9

**STATUTES**

Cal. Civ. Code § 3439.04(a)(1) ...................................................................................................10

Cal. Civ. Code § 3439.04(b)....................................................................................................10, 11

**RULES**

Fed. R. Civ. P. 65 ........................................................................................................................14

**INTRODUCTION**

Plaintiffs Newton AC/DC Fund, L.P. (the "Fund"), Patagon Management LLC ("Patagon"), Scallion Trading Ltd. ("Scallion," and together with the Fund and Patagon, the "Named Plaintiffs"), submit this memorandum of law in support of its motions for a temporary restraining order, a preliminary injunction, and alternate service of the Defendant, Maxim Ermilov.  This memorandum cites the declaration of Eric S. Meyer, dated May 28, 2026 (the "Meyer Decl.") and the declaration of William H. Newman, dated May 28, 2026 (the "Newman Decl.").

**FACTUAL BACKGROUND**

The Named Plaintiffs move for temporary and preliminary injunctive orders, freezing the digital assets currently held in the cryptocurrency wallets identified in Paragraphs 15 and 18 of the Meyer Decl. and leave to serve Ermilov by email and by posting on the social media platform Discord.

Ermilov stole millions of dollars' worth of digital assets from investors.  Meyer Decl. ¶ 18.  In doing so, he breached an agreement he made with them in which he promised to distribute assets to investors who acquired a certain amount of a cryptocurrency he created. *Id.* ¶¶ 12-13.  The Named Plaintiffs performed their part of the agreement and purchased over 55,000 of those tokens.  *Id.* ¶ 16.  Instead of honoring his end of the bargain, however, Ermilov absconded with over $15.77 million in funds.  *Id.* ¶ 18.

Upon information and belief, Ermilov resides in Russia.  *Id.* ¶ 3.  He resided in Russia as recently as late 2021 and has claimed on social media to reside in Abu Dhabi, United Arab Emirates.  *Id.*  Regardless, his residence abroad, as well as his access to Russian residency make it difficult for the Named Plaintiffs to enforce a judgment directly against his assets.  *Id.* Moreover, Ermilov has demonstrated an imminent intent to dissipate or hide the stolen funds

by depositing them in a cryptocurrency service that uses encryption and mixing to shield assets. *Id.*

Some of the assets Ermilov stole are in the form of a stablecoin cryptocurrency issued by Circle Internet Financial, LLC ("Circle"). *Id.* ¶ 20. Circle has the ability to freeze those assets, but Ermilov may thwart that ability if he transfers the cryptocurrency or converts it to another form that cannot be frozen. *Id.*

Court intervention is therefore necessary to prevent Ermilov from transferring any further cryptocurrency assets belonging to investors and to compel Circle to freeze the assets to avoid irreparable injury upon the Plaintiffs. *Id.* ¶ 4.

Finally, service upon Ermilov through traditional means is not practicable because he resides abroad and has no publicly disclosed address, and so this Court should approve service upon him via email and Discord. *Id.* ¶¶ 3 and 5; *see* Newman Decl. ¶ 8.

### A. Ermilov Created a Cryptocurrency Called USD+ and He Created OVN

Ermilov created a cryptocurrency platform called Overnight Finance. Meyer Decl. ¶ 7. This platform allowed users to invest in various cryptocurrencies in a manner similar to buying shares in a money market mutual fund. *Id.*

Ermilov solicited investments by selling a type of cryptocurrency called a stablecoin. Stablecoins are cryptocurrency tokens that are designed to have a stable value because they can always be redeemed for an underlying asset. *Id.* ¶ 8. The potential for on demand redemption keeps the value of the stablecoin steady at the value of the underlying asset. *Id.*

The stablecoin Ermilov sold was called USD+. *Id.* ¶ 9. He sold USD+ tokens for the price of one USDC token each. *Id.* USDC is another stablecoin issued by Circle and its value is kept at one dollar since Circle allows users to redeem USDC tokens for U.S. dollars. *Id.*

Ermilov took the USDC tokens he received from selling USD+ tokens and invested

2

them in other cryptocurrency opportunities. *Id.* ¶ 10. Ermilov promised some of the proceeds earned by those investments would be returned to owners of USD+ tokens in the form of interest or "rebases," which is a payment similar to capitalized interest in the decentralized cryptocurrency industry, and that the rest of the proceeds would be paid to the Overnight Finance protocol itself, which was kept in certain publicly disclosed cryptocurrency wallets (the "Treasury"). *Id.*

**B.     Ermilov Made an Agreement With Investors to Sell OVN**

Ermilov also created OVN, another cryptocurrency. Meyer Decl. ¶ 11. Unlike USD+ tokens, OVN tokens themselves could not be automatically redeemed for USDC tokens and did not generate the same investment returns as USD+ tokens. *Id.*

Ermilov promoted and sold OVN tokens by expressly promising that purchasers would obtain rights to control the profits generated by the Overnight Finance protocol, which he held in the Treasury, including to direct a distribution of such profits. *Id.* ¶ 12. In particular, he promised that OVN tokens were "governance" tokens that conferred upon purchasers the right to vote on what to do with Treasury assets. *Id.*

On November 6, 2024, Ermilov wrote on Discord that, "you can buy 51% of OVNs and vote to have [the Treasury] distributed." *Id.* ¶ 13.

Ermilov made other statements consistent with the representation that OVN tokens were worth a share of the Treasury. *Id.* ¶ 14. For example, on April 10, 2024, he wrote, "Sustainable growth of [the Treasury] is the only way for us to keep growing OVN price," meaning that growth in the Treasury was correlated with a corresponding increase in the price of OVN  tokens. *Id.*

Ermilov was also clear what assets were included in the Treasury. *Id.* ¶ 15. He referred to it as "POL" or "protocol owned liquidity." *Id.* This refers in the cryptocurrency

industry to the assets a cryptocurrency platform maintains for transactions with users. *Id.* For the Overnight Finance protocol, Ermilov disclosed, through his statements and actions, that the Treasury assets were held in the following wallets:

- 0x898137400867603e6d713cbd40881dd0c79e47cb;

- 0xf02d9f19060ee2dd50047dc6e1e9ebac9ba436fe;

- 0x784cf4b62655486b405eb76731885cc9ed56f42f;

- 0xe497285e466227f4e8648209e34b465daa1f90a0; and

- 0x9030d5c596d636eefc8f0ad7b2788ae7e9ef3d46.

*Id.*

The Plaintiffs purchased OVN tokens in the manner Ermilov designed: using the Overnight Finance protocol through liquidity pools substantially seeded and owned by the protocol. *Id.* ¶ 16. Specifically, Ermilov deployed a smart contract, a computer program stored on a blockchain which can also hold cryptocurrency, on each of the Base and Optimism blockchains on September 19 and 20, 2023, with the addresses 0x61366A4e6b1DB1b85DD701f2f4BFa275EF271197 and 0x844d7d2fca6786be7de6721aabdff6957ace73a0, respectively. *Id.* Ermilov deposited approximately 23,000 OVN tokens into the two smart contracts. *Id.* The Named Plaintiffs together used these smart contracts to purchase over 55,000 OVN tokens, which is over 5.5% of all OVN tokens in existence. *Id.*

### C.    Ermilov Breached the Agreement and Stole Treasury Assets

The Plaintiffs as a class own the vast majority of OVN tokens, over 91%. Some class members participated in a vote on May 4, 2026, to distribute the Treasury assets (the "Proposal"). Meyer Decl. ¶ 17. By early morning on May 11, 2026, Pacific Time, holders of more than half of the outstanding amount of OVN tokens had voted in favor of the Proposal,

with no votes against.  *Id.*

In response to the vote, Ermilov repudiated his previous representations that the OVN tokenholders could vote to distribute the Treasury to themselves on a pro rata basis.  Just before the vote crossed the 50% threshold on May 11, 2026, someone withdrew Treasury assets.  Upon information and belief, it was Ermilov who transferred Treasury assets in preparation to put them permanently out of reach of the OVN tokenholders who had voted to distribute them. *Id.* ¶ 18.  In all, Ermilov moved over $15.77 million in assets out of the Treasury wallets into a newly created wallet (the "New Wallet").  *Id.*  Of these assets, roughly $14 million were bridged to the Ethereum blockchain, and the vast majority of those assets were deposited in three separate smart contracts deployed and managed by the Zama protocol, which were designed to enhance secrecy and allow for confidential transfers to other wallets. *Id.*  One of these Zama smart contracts (the "Zama Wallet") received a deposit of approximately 12.5 million USDC tokens from the New Wallet.  *Id.*  The Zama Wallet has the following address on the Ethereum blockchain:

0xe978F22157048E5DB8E5d07971376e86671672B2.  *Id.*

Ermilov acknowledged his misconduct.  *Id.* ¶ 19.  Ermilov wrote in a May 14, 2026, Discord post that, "a group of people took control of 50+% of OVNs, so they control the protocol now."  *Id.*  In the same post, he admitted that he "told [investors] to get to 51%" to "drive the price [of OVN tokens] up to 7-10 USD."  *Id.*  But now that investors had done so, Ermilov stated that investors are not entitled to the Treasury assets.  *Id.*

**D.**    Ermilov Tried to Hide Assets in the Zama Platform, But Circle Can Still Block Most of Them

A portion of the assets in the Treasury are in the form of cryptocurrencies for which there is no effective freezing mechanism.  Meyer Decl. ¶ 20.  But over $12.5 million are in the form of USDC tokens on the Ethereum blockchain, and Circle has the ability to blacklist

5

the address of the Zama Wallet and prevent their transfer. *Id.* It is Circle's general practice to do this in response to a court order, pursuant to its blacklisting policy. *Id.*; *see also Bullock v. Doe,* 2023 U.S. Dist. LEXIS 234778, at \*21 (N.D. Iowa Nov. 3, 2023); *Newton AC/DC Fund, L.P. v. Circle Internet Financial, LLC*, Index No. 654157/2025, NYSCEF Doc. No. 10, (N.Y. Cty. July 16, 2025).

The Named Plaintiffs seek temporary and preliminary injunctive orders directing Circle to blacklist the Zama Wallet to prevent Ermilov from further dissipating the USDC assets held there that belong to the Treasury, and in turn, the OVN tokenholders. *Id.* ¶ 21. Such orders would not materially harm any third party because Treasury assets comprise nearly all of the assets in the Zama Wallet, and, upon information and belief, substantially all of the rest of the depositors in the Zama Wallet are officers or employees of Zama and are known to Zama. *Id.* To the extent that the Named Plaintiffs' requested relief affects the assets of parties unrelated to Ermilov, the Named Plaintiffs are prepared to advance funds sufficient to make those parties whole. *Id.*

The Named Plaintiffs further seek temporary and preliminary injunctive orders preventing Ermilov from transferring any further Treasury assets. *Id.* ¶ 22.

## ARGUMENT

The Court should grant the Named Plaintiffs' proposed temporary restraining order and preliminary injunction motions to prevent Ermilov from absconding with their assets and to ensure that those assets do not disappear forever. In particular, it should compel Circle to implement its blacklisting policy to prohibit transfers of USDC tokens from the Zama Wallet. It should also restrain Ermilov from moving assets from the Treasury or the New Wallet.

Courts grant this relief in cryptocurrency matters when a bad actor wrongfully maintains custody of a plaintiff's assets because it is necessary for plaintiffs to avoid

6

irreparable harm.

In addition, traditional service methods upon Ermilov would be futile, and so the Court should grant the Plaintiffs' request for substituted service by email and in the Discord forum where Ermilov is active.  Meyer Decl. ¶¶ 5-6.

I.    **The Plaintiffs Meet the Requirements for a Temporary Restraining Order and a Preliminary Injunction**

The applicable standard for issuance of a temporary restraining order is identical to the standard governing the issuance of a preliminary injunction.  *Perez v. Wolf*, 445 F. Supp. 3d 275, 292 (N.D. Cal. 2020).  A plaintiff must show that (1) it is "likely to succeed on the merits," (2) it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Id.* (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

The Ninth Circuit also applies the "serious questions" test in its approach to preliminary injunctions.  *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under the serious questions test, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."  *Id.*  Thus, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

A.    The Plaintiffs Are Likely to Succeed on the Merits

To satisfy the success on the merits element, a plaintiff need not prove its case in full, nor show that it is more likely than not to prevail.  *Koller v. Brown*, 224 F. Supp. 3d 871, 875 (N.D. Cal. 2016) (citing *Univ. of Tex. v. Camenisch*,  451 U.S. 390, 395 (1981) and *Leiva-*

7

*Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011)).  "Instead, [it] must demonstrate 'a fair chance of success on the merits' or raise questions 'serious enough to require litigation.'" *Koller*, 224 F. Supp. 3d at 875 (quoting *Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978)).  The Ninth Circuit describes the "difference between the two formulations [as] insignificant."  *Benda*, 584 F.2d at 315.  Here, the Plaintiffs raise questions serious enough to require litigation.

### 1.    Fraudulent Transfer

Under the California Uniform Voidable Transfers Act ("UVTA"), "a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer [ ] with an actual intent to hinder, delay or defraud any creditor. . . ."  *Lo v. Lee*, 24 Cal. App. 5th 1065, 1071 (Cal. Ct. App. 2018) (citations omitted); *see* Cal. Civ. Code §§ 3439.04(a)(1).

"Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer."  *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (Cal. Ct. App. 2005).  Courts consider a number of factors as indicating the "badges of fraud," which the California Legislature codified in 2005 in the UVTA.  *Id.*; *see* Cal. Civ. Code § 3439.04(b).  These factors include whether the transfer was made to an insider; whether the transferee retained possession or control after the transfer; whether the transfer was disclosed or concealed; whether the transfer involved substantially all the debtor's assets; whether the debtor removed or concealed assets; and whether the transfer occurred shortly before or shortly after a substantial debt was incurred. *See* Cal. Civ. Code § 3439.04(b).

California courts have held that "a plaintiff need not even have a judgment, much less a lien, at the time of the challenged transfer" to be considered a creditor under the UVTA.

*Sanger v. Ahe Ahn*, 2019 U.S. Dist. LEXIS 178473, at *17-18 (N.D. Cal. Oct. 15, 2019) (citing *Potter v. All. United Ins. Co.*, 37 Cal. App. 5th 894, 909 (Cal. Ct. App. 2019)).  A plaintiff need only have a "claim," which is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Potter*, 37 Cal. App. 5th at 909 (quoting Cal. Civ. Code § 3439.01(b)).

Here, Ermilov transferred substantially all Treasury assets away from wallets controlled by the Overnight Finance protocol to wallets controlled by him alone.  Meyer Decl. ¶ 18.  Ermilov deposited a majority of the Treasury assets in Zama smart contracts designed to facilitate concealing transaction details.  *Id.*  Ermilov controls the Treasury assets deposited in the Zama smart contracts.  *Id.*  Ermilov moved the Treasury assets mere hours before it became clear that a vote on the Proposal would be successful and OVN token holders would be demanding a distribution of the Treasury assets. *Id.*

**2.**    Breach of Contract

"Under California law, a claim for breach of contract consists of four elements: (1) a contract, (2) the plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages to the plaintiff from defendant's breach." *Smith v. Wells Fargo Bank, N.A.*, 809 F. Supp. 3d 922, 941 (N.D. Cal. 2025).

Here, the Named Plaintiffs and Ermilov entered into contracts when the Named Plaintiffs purchased OVN tokens from the system Ermilov created.  In exchange, Ermilov promised to confer rights to vote on the distribution of Treasury assets and to obey the result of elections.  Meyer Decl. ¶¶ 12-13.

Beginning on May 4, 2026, and finishing early on May 11, 2026, the holder of a majority of OVN tokens in existence voted to distribute the OVN Treasury to all OVN

tokenholders.  *Id.* ¶ 17.  Ermilov has demonstrated an intent to refuse to honor the vote or permit a distribution by frustrating the tokenholders' ability to vote on the distribution by stealing the assets himself.  *Id.* ¶ 18. This breach caused the Named Plaintiffs to suffer damages because they cannot obtain the full Treasury assets.

### B.     Plaintiffs will suffer irreparable harm absent relief

The Plaintiffs will suffer irreparable harm if this Court does not enter a temporary restraining order.  Ermilov's actions and recent asset transfers show that he intends to hide and steal the Treasury funds.  Id. ¶¶ 18, 23.  And Ermilov's use of the Zama Wallet demonstrates his intent to obscure records of his asset transfers.  *Id.* ¶¶ 18, 23.

Courts grant injunctive relief to prevent the dissipation of assets.  *See, e.g., Fid. Nat'l Title Ins. Co. v. Castle*, 2011 U.S. Dist. LEXIS 135316, at *23 (N.D. Cal. Nov. 23, 2011).  And district courts across the country have applied this basic rule in the cryptocurrency context, agreeing that the risk of irreparable harm is "likely in matters concerning fraudulent transfers of cryptocurrency due to the risk of anonymous and speedy asset dissipation."  *Jacobo v. Doe*, 2022 U.S. Dist. LEXIS 101504, at *15-16 (E.D. Cal. June 7, 2022); *see also Lagemann v. Spence*, 2019 U.S. Dist. LEXIS 171887, at *7 (S.D.N.Y. Jan. 24, 2019) (granting request for temporary restraining order and barring defendant from transferring assets from any cryptocurrency wallet or cryptocurrency trading account); *Heissenberg v. Doe*, No. 2021 U.S. Dist. LEXIS 257218, at *8-10 (S.D. Fla. Apr. 22, 2021) (finding irreparable harm to be likely if a temporary restraining order were not granted due to the "speed and potential anonymity of cryptocurrency transactions"); *Fed. Trade Comm'n v. Dluca*, No. 0:18-cv-60379-RKA, 2018 U.S. Dist. LEXIS 237844 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 238558 (S.D. Fla. Mar. 12, 2018).  As such, a temporary restraining order is appropriate to prevent the immediate and irreparable harm

likely to be caused when the asset at issue involves cryptocurrency.

The Named Plaintiffs will suffer irreparable harm absent the relief sought. Without a temporary restraining order, the Named Plaintiffs are powerless to stop Ermilov from continuing to engage in improper conduct aimed at frustrating any future judgment in this case. Ermilov has already attempted to hide assets from the Named Plaintiffs by transferring assets to the Zama Wallet, which is designed to shield assets, and which further demonstrates the necessity of prompt intervention. Meyer Decl. ¶¶ 18, 23.

Because cryptocurrency transactions are near instantaneous and difficult to trace, it is imperative to freeze the assets in their current wallets to maintain the status quo and avoid dissipation. *See Astrove v. Doe*, 2022 U.S. Dist. LEXIS 129067, at *11 (S.D. Fla. June 17, 2022) ("considering the speed with which cryptocurrency transactions are made, and the anonymity of those transactions, it is imperative to freeze the Assets Under Claim in the Destination Addresses to maintain the *status quo* and avoid dissipation of the money illegally taken from Plaintiff.").

Here, the Court should not only bar Ermilov from transferring assets from the Treasury wallets and the New Wallet, but also order Circle to freeze the Zama Wallet to prevent any remaining USDC from being dissipated.

**C.**    The Balance of Equities Favors a Temporary Restraining Order

The balance of equities favors the Plaintiffs because they would be severely prejudiced if Ermilov dissipates the funds wrongfully withheld from it. *See Jacobo*, 2022 U.S. Dist. LEXIS 101504, at *17 ("withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court"). This is true because freezing Treasury assets will prevent Ermilov from hiding away assets that are not rightfully his in untraceable cryptocurrency accounts. It

will also maintain the status quo and allow for the Named Plaintiffs and other investors to recover their valuable assets.

By contrast, Ermilov faces lesser prejudice if the Court grants injunctive relief. He has no right to the assets in the Zama Wallet since he stole them from investors. Circle, itself, faces no prejudice since its freezing of assets does not harm Circle.

As shown above, Ermilov faces reduced harm from freezing the Zama Wallet assets, while the Plaintiffs will face irreparable harm without the ability to ever recover those assets.

**D.**     Public Interest Favors a Temporary Restraining Order

A temporary restraining order here would serve the public interest, including preventing the conversion of the Named Plaintiffs' assets, protecting against the risk that such funds will be illegally transferred—including via a platform designed for that purpose—and by promoting the objective of the Financial Crimes Enforcement Network (FinCEN) by assuring the public that courts will protect investors' assets from bad actors and aid investors in their recovery of wrongfully withheld assets when they can be readily located and traced to specific locations rather than waiting until after the funds have been transferred out to untraceable cryptocurrency accounts. *See, e.g., Jacobo*, 2022 U.S. Dist. LEXIS 101504, at *18.

In contrast, there is little public interest in not freezing the assets in question. While arguably there is an interest in not attaching assets unnecessarily, the Named Plaintiffs have shown that Ermilov has no legal reason to remove the assets from these wallets during the pendency of this dispute—in fact, doing so would be another breach of Ermilov's explicit promises to the Named Plaintiffs and others that he would hold the assets for their benefit and at their voting direction.

For these reasons, courts have granted similar restraints, directing Circle to blacklist

wallets holding USDC tokens. *See, e.g., Bullock,* 2023 U.S. Dist. LEXIS 234778, at *21; *Newton*, Index No. 654157/2025, NYSCEF Doc. No. 10.

## II.   Fed. R. Civ. P. 65 Permits a Temporary Restraining Order Without Notice

Federal Rule of Civil Procedure 65(b) permits this Court to enter a temporary restraining order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition," or "the movant's attorney certifies in writing any efforts made to give notice and the reasons it should not be required."

The Named Plaintiffs have met both requirements of Rule 65(b).

As for the first prong, and as summarized above and stated in more detail in the supporting Declaration of Eric S. Meyer, the Named Plaintiffs will suffer immediate and irreparable harm absent a temporary restraining order. The anonymous nature of cryptocurrency tokens, the specific risk that Ermilov will use Zama to launder them, and the fact that Ermilov has comingled the tokens, significantly inhibits the Named Plaintiffs' ability to trace the Treasury funds, which causes immediate harm given Ermilov's actions to transfer funds beyond the Named Plaintiffs' reach. *See* Meyer Decl. ¶¶ 18, 23. Because of this, advance notice of the next stage of this action is likely to "render fruitless further prosecution of this action." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

As for the second prong, the Plaintiffs are unable to promptly serve Ermilov by traditional means because he has no known physical address, his evasiveness, and his status as a foreign resident. *See* Newman Decl. ¶ 8. Moreover, notice may prompt him to hide assets beyond the Court's power to attach. *Id.*

## III.   This Court Should Permit Alternative Means To Serve Defendant Ermilov

The Named Plaintiffs seek to serve Ermilov via alternative service by email at

13

wmermus@gmail.com and by posting to the Discord forum where Ermilov has been active. *See* Meyer Decl. ¶ 6.

Where alternative service is reasonably calculated to notify parties of legal action, it satisfies due process. *See Ramales v. McCartney*, 2024 U.S. Dist. LEXIS 167412, at *4-5 (N.D. Cal. Aug. 23, 2024) (finding "service by email resulted in actual notice"); *Twitch Interactive, Inc. v. Fishwoodco Gmbh*, 2022 U.S. Dist. LEXIS 207109, at *9 (N.D. Cal. Nov. 15, 2022) (granting leave to serve via a combination of email and social media); *GSV Futures LLC v. Casmain L.P.*, 2022 U.S. Dist. LEXIS 205413, at *6-7 (N.D. Cal. Nov. 10, 2022) (citing cases that have allowed service by social media "where there was evidence that the parties being served regularly used those means to communicate" and permitting service by email and WeChat).

As described above, alternative service is warranted in this case because Ermilov has no known physical address and because he likely resides abroad. Meyer Decl. ¶¶ 3, 5. However, Ermilov has used email and Discord. Alternative service, via the above-proposed methods, is therefore reasonably calculated to notify Ermilov of the pending legal action.

**IV.    This Court Should Not Require The Named Plaintiffs to Post a Bond**

The Ninth Circuit has recognized that "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* The non-moving party holds the burden of proof that it will be harmed by the injunction. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (finding district court did not abuse its discretion where defendant "failed to request

a bond or submit any evidence regarding [his] likely damages").

Here, there is no realistic likelihood of harm to Ermilov from enjoining his conduct or directing Circle to freeze the Zama Wallet to maintain the status quo.  He is unlikely to be able to present any evidence to the contrary.  The Named Plaintiffs reserve the right to reply to any such evidence or arguments Ermilov presents.

## CONCLUSION

The plaintiffs respectfully request that the Court grants their motion and any other relief it deems just.

Dated: Palo Alto, California
          May 28, 2026

PIERSON FERDINAND LLP

/s/ Matthew H. Weiner

Matthew H. Weiner
SBN 236394
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone:  415.915.4415
Facsimile:   415.890.4845
*matthewweiner@pierferd.com*

WILL NEWMAN LAWYER PLLC

/s/ William H. Newman

William H. Newman
 (*pro hac vice* motion forthcoming)
Tara Q. Higgins
(*pro hac vice* motion forthcoming)
33 Nassau Avenue, Second Floor
Brooklyn, New York 11222
Phone: (718) 218-3360
Email: will@willnewmanlawyer.com
          tara@willnewmanlawyer.com

*Attorneys for the Fund and Proposed Class Counsel*