**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Newton AC/DC Fund, L.P., Patagon Management LLC, and Scallion Trading Ltd., on behalf of all other similarly situated Plaintiffs,

                  Plaintiffs,

      v.

Maxim Ermilov,

                  Defendant,

      and

Circle Internet Financial, LLC,

                  Relief Defendant.

Civil Action No. _____

**DECLARATION OF ERIC S. MEYER**

Eric S. Meyer hereby states the following:

1.      I am a partner of the Newton AC/DC Fund L.P. (the "Fund") and an experienced cryptocurrency investor. The Fund, along with Patagon Management LLC ("Patagon") and Scallion Trading Ltd. ("Scallion," and collectively, the "Named Plaintiffs"), individually and on behalf of all other similarly situated class members, have filed a complaint, asserting claims against Maxim Ermilov for fraudulent transfer under the California Uniform Voidable Transfers Act and breach of contract.

2.      I submit this declaration in support of the Named Plaintiffs' motion for a temporary restraining order and a preliminary injunction (the "TRO Motion"), each prohibiting Ermilov from transferring any further assets belonging to investors and directing Circle Internet Financial, LLC ("Circle") to freeze a substantial portion of those assets pursuant to its blacklisting policy.

**Injunctive Relief is Necessary and Traditional Means of Service on Ermilov is Not Practicable**

3.      Upon information and belief, Ermilov resides in Russia.  He resided in Russia as recently as late 2021 and has claimed on social media to reside in Abu Dhabi, United Arab Emirates.  Regardless, his residence abroad, as well as his access to Russian residency make it difficult for the Named Plaintiffs to enforce a judgment directly against his assets.  Moreover, Ermilov has demonstrated an imminent intent to dissipate or hide the stolen funds by depositing them in a cryptocurrency service that uses encryption and mixing to shield assets.

4.      Court intervention is necessary to prevent Ermilov from transferring any further cryptocurrency assets belonging to investors and to compel Circle to freeze the assets to avoid irreparable injury upon the Plaintiffs.

5.      Ermilov has no known physical address at which the Named Plaintiffs may serve him.  The Named Plaintiffs have been unable even to confirm the country in which Ermilov resides.

6.      The Named Plaintiffs and others have communicated with Ermilov primarily through Discord and as recently as May 20, 2026.    They have also identified wmermus@gmail.com as his email address, which was listed on a grant application to The Arbitrum Foundation in March 2024.  A true and correct copy of the grant application located at: https://forum.arbitrum.foundation/t/overnight-finance-ltipp-application-final/21854, is attached hereto as **Exhibit A**.

**Ermilov Created a Cryptocurrency Called USD+ and He Created OVN**

7.      Ermilov created a cryptocurrency platform called Overnight Finance. This platform allowed users to invest in various cryptocurrencies in a manner similar to buying shares in a money market mutual fund.

2

8.      Ermilov solicited investments by selling a type of cryptocurrency called a stablecoin.  Stablecoins are cryptocurrency tokens that are designed to have a stable value because they can always be redeemed for an underlying asset.  The potential for on demand redemption keeps the value of the stablecoin steady at the value of the underlying asset.

9.      The stablecoin Ermilov sold was called USD+.  He sold USD+ tokens for the price of one USDC token each.  USDC is another stablecoin issued by Circle and its value is kept at one dollar since Circle allows users to redeem USDC tokens for U.S. dollars.

10.     Ermilov took the USDC tokens he received from selling USDC+ tokens and invested them in other cryptocurrency opportunities.  Ermilov promised some of the proceeds earned by those investments would be returned to owners of USD+ tokens in the form of interest or "rebases," which is a payment similar to capitalized interest in the decentralized cryptocurrency industry, and that the rest of the proceeds would be paid to the Overnight Finance protocol itself, which was kept in certain publicly disclosed cryptocurrency wallets (the "Treasury").

**Ermilov Made an Agreement With Investors to Sell OVN**

11.     Ermilov also created OVN, another cryptocurrency.  Unlike USD+ tokens, OVN tokens themselves could not be automatically redeemed for USDC tokens and did not generate the same investment returns as USD+ tokens.

12.     Ermilov promoted and sold OVN tokens by expressly promising that purchasers would obtain rights to control the profits generated by the Overnight Finance protocol, which he held in the Treasury, including to direct a distribution of such profits.  In particular, he promised that OVN tokens were "governance" tokens that conferred upon purchasers the right to vote on what to do with Treasury assets.

3

13.    On November 6, 2024, Ermilov wrote on Discord that, "you can buy 51% of OVNs and vote to have [the Treasury] distributed."  A true and correct copy of this statement is attached hereto as **Exhibit B**.

14.    Ermilov made other statements consistent with the representation that OVN tokens were worth a share of the Treasury.  For example, on April 10, 2024, he wrote, "Sustainable growth of [the Treasury] is the only way for us to keep growing OVN price," meaning that growth in the Treasury was correlated with a corresponding increase in the price of OVN  tokens.  A true and correct copy of this statement is attached hereto as **Exhibit C**.

15.    Ermilov was also clear what assets were included in the Treasury.  He referred to it as "POL" or "protocol owned liquidity."  This refers in the cryptocurrency industry to the assets a cryptocurrency platform maintains for transactions with users.  For the Overnight Finance protocol, Ermilov disclosed, through his statements and actions, that the Treasury assets were held in the following wallets:

- 0x898137400867603e6d713cbd40881dd0c79e47cb;
- 0xf02d9f19060ee2dd50047dc6e1e9ebac9ba436fe;
- 0x784cf4b62655486b405eb76731885cc9ed56f42f;
- 0xe497285e466227f4e8648209e34b465daa1f90a0; and
- 0x9030d5c596d636eefc8f0ad7b2788ae7e9ef3d46.

16.    The Plaintiffs purchased OVN tokens in the manner Ermilov designed: using the Overnight Finance protocol through liquidity pools substantially seeded and owned by the protocol.  Specifically, Ermilov deployed a smart contract, a computer program stored on a blockchain which can also hold cryptocurrency, on each of the Base and Optimism blockchains on    September    19    and    20,    2023,    with    the    addresses 0x61366A4e6b1DB1b85DD701f2f4BFa275EF271197                           and

4

0x844d7d2fca6786be7de6721aabdff6957ace73a0, respectively. Ermilov deposited approximately 23,000 OVN tokens into the two smart contracts. The Named Plaintiffs together used these smart contracts to purchase over 55,000 OVN tokens, which is over 5.5% of all OVN tokens in existence. When purchasing its 30,000 OVN tokens, the Fund did not use the Overnight Finance website, but instead conducted the transactions directly with one of the protocol's liquidity pools.

**Ermilov Breached the Agreement and Stole Treasury Assets**

17. The Plaintiffs as a class own the vast majority of OVN tokens, over 91%. Some class members participated in a vote on May 4, 2026, to distribute the Treasury assets (the "Proposal"). By early morning on May 11, 2026, Pacific Time, holders of more than half of the outstanding amount of OVN tokens had voted in favor of the Proposal, with no votes against. A true and correct copy of the Proposal overview located at: https://snapshot.org/#/s:ovncommunity.eth/proposal/0x253dea808600c3cd198dfd8d73c188f6623 ed520208058be13577ce23b98c061, is attached hereto as **Exhibit D**.

18. In response to the vote, Ermilov repudiated his previous representations that the OVN tokenholders could vote to distribute the Treasury to themselves on a pro rata basis. Just before the vote crossed the 50% threshold on May 11, 2026, someone withdrew Treasury assets. Upon information and belief, it was Ermilov who transferred Treasury assets in preparation to put them permanently out of reach of the OVN tokenholders who had voted to distribute them. In all, Ermilov moved over $15.77 million in assets out of the Treasury wallets into a newly created wallet (the "New Wallet"). Of these assets, roughly $14 million were bridged to the Ethereum blockchain, and the vast majority of those assets were deposited in three separate smart contracts deployed and managed by the Zama protocol, which were designed to enhance secrecy and allow for confidential transfers to other wallets. One of these Zama smart contracts (the "Zama Wallet")

received a deposit of approximately 12.5 million USDC tokens from the New Wallet. The Zama Wallet has the following address on the Ethereum blockchain: 0xe978F22157048E5DB8E5d07971376e86671672B2.

19.     Ermilov has been refreshingly blunt about his misconduct. Ermilov wrote in a May 14, 2026, Discord post that, "a group of people took control of 50+% of OVNs, so they control the protocol now." In the same post, he admitted that he "told [investors] to get to 51%" to "drive the price [of OVN tokens] up to 7-10 USD." But now that investors had done so, Ermilov stated that investors are not entitled to the Treasury assets. A true and correct copy of these statements is attached hereto as **Exhibit E**.

**Ermilov Tried to Hide Assets in the Zama Platform, But Circle Can Still Block Most of Them**

20.     A portion of the assets in the Treasury are in the form of cryptocurrencies for which there is no effective freezing mechanism. But over $12.5 million are in the form of USDC tokens on the Ethereum blockchain, and Circle has the ability to blacklist the address of the Zama Wallet and prevent their transfer. It is Circle's general practice to do this in response to a court order, pursuant to its blacklisting policy. A true and correct copy of Circle's blacklisting policy is attached hereto as **Exhibit F**.

21.     The Named Plaintiffs seek temporary and preliminary injunctive orders directing Circle to blacklist the Zama Wallet to prevent Ermilov from further dissipating the USDC assets held there that belong to the Treasury, and in turn, the OVN tokenholders. Such orders would not materially harm any third party because Treasury assets comprise nearly all of the assets in the Zama Wallet, and, upon information and belief, substantially all of the rest of the depositors in the Zama Wallet are officers or employees of Zama and are known to Zama. To the extent that the Named Plaintiffs' requested relief affects the assets of parties unrelated to Ermilov, the Named Plaintiffs are prepared to advance funds sufficient to make those parties whole.

22.     The Named Plaintiffs further seek temporary and preliminary injunctive orders preventing Ermilov from transferring any further Treasury assets.

**The Named Plaintiffs Will Suffer Irreparable Harm Absent a Temporary Restraining Order.**

23.     The anonymous nature of cryptocurrency tokens, the specific risk that Ermilov will use Zama to launder them, and the fact that Ermilov has comingled the tokens, significantly inhibits the Named Plaintiffs' ability to trace the Treasury funds, which causes immediate harm given Ermilov's actions to transfer funds beyond the Named Plaintiffs' reach.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28, 2026.

_Eric S. Meyer_
Eric S. Meyer