**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Newton AC/DC Fund, L.P., Patagon Management LLC, and Scallion Trading Ltd., on behalf of all other similarly situated Plaintiffs,

Plaintiffs,

v.

Maxim Ermilov,

Defendant,

and

Circle Internet Financial, LLC,

Relief Defendant.

Civil Action No. 5:26-cv-05055-PCP

**DECLARATION OF ERIC S. MEYER**

Eric S. Meyer hereby states the following:

1.     I am a partner of the Newton AC/DC Fund L.P. (the "Fund") and an experienced cryptocurrency investor.  The Fund, along with Patagon Management LLC ("Patagon") and Scallion Trading Ltd. ("Scallion," and collectively, the "Named Plaintiffs"), individually and on behalf of all other similarly situated class members, have filed a complaint, asserting claims against Maxim Ermilov for fraudulent transfer under the California Uniform Voidable Transfers Act and breach of contract.

2.     I submit this declaration in support of the Named Plaintiffs' motion for a preliminary injunction (the "PI Motion"), prohibiting Ermilov from transferring any further assets belonging to investors.

**Injunctive Relief is Necessary**

3.     Upon information and belief, Ermilov resides in Russia.  He resided in Russia as recently as late 2021 and has claimed on social media to reside in Abu Dhabi, United Arab

1

Emirates.  Regardless, his residence abroad, as well as his access to Russian residency make it difficult for the Named Plaintiffs to enforce a judgment directly against his assets.  Moreover, Ermilov has demonstrated an imminent intent to dissipate or hide the funds belonging to the Named Plaintiffs and similarly situated class members (i.e. OVN token holders or "Investors") by depositing them in a cryptocurrency service that uses encryption to shield transaction details.

4.     Court intervention is necessary to prevent Ermilov from transferring any further assets belonging to Investors.

**Ermilov Made an Agreement With Investors to Sell OVN**

5.     Ermilov created a cryptocurrency platform called Overnight Finance. This platform allowed users to invest in various cryptocurrencies in a manner similar to buying shares in a money market mutual fund.

6.     Ermilov also created OVN, a cryptocurrency.  He promoted and sold OVN tokens by expressly promising that purchasers would obtain rights to control the profits generated by the Platform, which he held in certain cryptocurrency wallets (collectively, the "Treasury"), including to direct a distribution of those profits.  In particular, he promised that OVN tokens were "governance" tokens that conferred upon purchasers the right to vote on what to do with Treasury assets.

7.     On November 6, 2024, Ermilov wrote on Discord that, "you can buy 51% of OVNs and vote to have [the Treasury] distributed."  A true and correct copy of this statement is attached hereto as **Exhibit A**.

8.     Ermilov made other statements consistent with the representation that OVN tokens were worth a share of the Treasury.  For example, on April 10, 2024, he wrote, "Sustainable growth of [the Treasury] is the only way for us to keep growing OVN price," meaning that growth in the Treasury was correlated with a corresponding increase in the price of OVN tokens.  A true and correct copy of this statement is attached hereto as **Exhibit B**.

9. Upon information and belief, Ermilov authored an X thread on November 28, 2023, from the official Overnight Finance X account, that stated: "In summary: OVN is a governance token of the Overnight ecosystem that provides real value for OVN holders. . . . It's backed by protocol revenue and has mechanics to increase demand and buying pressure." A true and correct copy of this statement is attached hereto as **Exhibit C**.  If Ermilov did not author the X thread, he at least became aware of it through direct messages with an investor at the time and made no effort to delete or correct the thread.

10. Ermilov was also clear what assets were included in the Treasury.  He referred to it as "POL" or "protocol owned liquidity."  This refers in the cryptocurrency industry to the assets a cryptocurrency platform maintains for transactions with users.  Ermilov disclosed, through affirmative statements as well as explicit transfers, that the Treasury assets were kept in the following wallets (the "Treasury Wallets"):

- 0x898137400867603e6d713cbd40881dd0c79e47cb;
- 0xf02d9f19060ee2dd50047dc6e1e9ebac9ba436fe;
- 0x784cf4b62655486b405eb76731885cc9ed56f42f;
- 0xe497285e466227f4e8648209e34b465daa1f90a0; and
- 0x9030d5c596d636eefc8f0ad7b2788ae7e9ef3d46.

The last three of these addresses were explicitly listed as "Treasury Addresses" in a funding application submitted by Ermilov to the Arbitrum Foundation in March 2024.  A true and correct copy of the grant application located at: https://forum.arbitrum.foundation/t/overnight-finance-ltipp-application-final/21854, is attached hereto as **Exhibit D**.

11. The Plaintiffs purchased OVN tokens in the manner Ermilov designed: using the Platform's automated trading accounts (which are called "liquidity pools" in the cryptocurrency industry) that Ermilov himself substantially seeded and owned.  Specifically, Ermilov deployed a smart contract, a computer program stored on a blockchain which can also hold

cryptocurrency, on each of the Base and Optimism blockchains on September 19 and 20, 2023, with the addresses 0x61366A4e6b1DB1b85DD701f2f4BFa275EF271197 and 0x844d7d2fca6786be7de6721aabdff6957ace73a0, respectively. Ermilov deposited approximately 23,000 of the total supply of 1 million OVN tokens into the two smart contracts. The Named Plaintiffs together used these smart contracts to purchase over 55,000 OVN tokens, which is over 5.5% of all OVN tokens in existence. When purchasing its 30,000 OVN tokens, the Fund did not use the Overnight Finance website but instead conducted the transactions directly with one of the protocol's liquidity pools.

**Ermilov Breached the Agreement and Moved Assets Out of the Treasury**

12.    The Plaintiffs as a class own the vast majority of OVN tokens, over 91%. Some class members participated in a vote on May 4, 2026, to distribute the Treasury assets (the "Proposal"). By early morning on May 11, 2026, Pacific Time, holders of more than half of the outstanding amount of OVN tokens had voted in favor of the Proposal, with no votes against. The voting period closed on June 3, 2026, successfully passing the Proposal. A true and correct copy of the Proposal overview located at: https://snapshot.org/#/s:ovncommunity.eth/proposal/0x253dea808600c3cd198dfd8d73c188f6-623ed520208058be13577ce23b98c061, is attached hereto as **Exhibit E**.

13.    In response to the vote, Ermilov repudiated his previous representations that the Investors could vote to distribute the Treasury to themselves on a pro rata basis. Just before the vote crossed the 50% threshold on May 11, 2026, Ermilov removed a substantial portion of the assets from the Treasury Wallets (the "May 11 Removals"). In all, Ermilov moved over $15.77 million in assets out of the Treasury Wallets into a newly created wallet (the "New Wallet"). Of these assets, roughly $14 million were bridged to the Ethereum blockchain, and the vast majority of those assets were deposited in three separate smart contracts deployed and managed by the Zama protocol, which were designed to enhance secrecy and allow for confidential

4

transfers to other wallets. One of these Zama smart contracts (the "Zama-Circle Wallet") received a deposit of approximately 12.5 million USDC tokens from the New Wallet. The second of these Zama smart contracts (the "Zama-Tether Wallet") received a deposit of approximately 91,000 USDT tokens from the New Wallet. The third of these Zama smart contracts (the "Zama-ETH Wallet," and together with the Zama-Circle Wallet and the Zama-Tether Wallet, the "Zama Wallets") received a deposit of approximately 20.32 WETH tokens (approximately $47,500 of market value at the time) from the New Wallet.

14. Ermilov acknowledged the Investors' entitlement to the funds and his misconduct. Ermilov spoke to the Investors' entitlement in a May 14, 2026, Discord post that, "a group of people took control of 50+% of OVNs, so they control the protocol now." In the same post, he admitted that he "told [Investors] to get to 51%" to "drive the price [of OVN tokens] up to 7-10 USD." But now that Investors had done so, Ermilov stated that Investors are not entitled to the Treasury assets. A true and correct copy of these statements is attached hereto as **Exhibit F**.

**Ermilov Tried to Hide Assets in the Zama Platform**

15. Ermilov's transfers to the Zama Wallets frustrate the Investors' ability to trace the digital assets in which they have an interest. Once assets have been transferred to one of the Zama Wallets, a user may conduct confidential transfers within the Zama protocol that hide the recipient and amount of the transfer. The Named Plaintiffs were able to trace the Treasury assets within the Zama-Circle Wallet only due to the lack of third-party activity and minimal net deposits of less than 114,000 USDC (of which 97,000 USDC was deposited in one transaction by Zama itself) prior to Ermilov's transfer of about 12.5 million USDC tokens. The Named Plaintiffs are unable to trace the Treasury assets within the Zama-Tether Wallet and Zama-ETH Wallet because there were far more deposits in them prior to Ermilov's transfers and there has been far more third-party activity in them since.

**Ermilov Temporarily Reversed Transfer to Zama-Circle Wallet**

16.    After the Named Plaintiffs sought and obtained a temporary restraining order from this Court, Ermilov agreed to temporarily reverse the May 11 Removals by depositing those assets into the Treasury Wallets and the New Wallet and to refrain from any further transfers of Treasury Wallets and New Wallet assets pending the outcome of a preliminary injunction motion.

**The Named Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction**

17.    The anonymous nature of cryptocurrency tokens, the specific risk that Ermilov will use Zama to launder them arising from his past use of that service, and the fact that Ermilov has comingled the tokens with other assets, significantly inhibits the Named Plaintiffs' ability to trace the Treasury funds, which causes immediate harm given Ermilov's actions to transfer funds beyond the Named Plaintiffs' reach.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 5, 2026.

Eric S. Meyer
Eric S. Meyer

6