WILLIAM H. NEWMAN (*appearing pro hac vice*)
TARA Q. HIGGINS (*appearing pro hac vice*)
**NEWMAN LITIGATION PLLC**
33 Nassau Avenue, Second Floor
Brooklyn, NY 11222
Telephone:  718.218.3360
*will@newmanl.com*
*tara@newmanl.com*

Attorneys for Plaintiffs
NEWTON AC/DC FUND L.P., PATAGON MANAGEMENT, LLC,
SCALLION TRADING LTD., AND JOSHUA FONG, AND
OTHER SIMILARLY SITUATED PLAINTIFFS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Newton AC/DC Fund, L.P., Patagon Management LLC, Scallion Trading Ltd., and Joshua Fong, individually and on behalf of all other similarly situated Plaintiffs, <br><br> Plaintiffs, <br> v. <br><br> Maxim Ermilov, <br><br> Defendant. | Civil Action No. 5:26-cv-05055-PCP |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY
NEWTON AC/DC FUND, L.P., PATAGON MANAGEMENT LLC,
SCALLION TRADING LTD., AND JOSHUA FONG
FOR CLASS CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES,
AND TO APPOINT CLASS COUNSEL**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................1

**PRELIMINARY STATEMENT** ........................................................................................1

**FACTUAL BACKGROUND** ............................................................................................3

    I.   Ermilov Made an Agreement With Investors to Sell OVN ...............................................3

    II.  Ermilov Breached the Agreement and Stole Treasury Assets .........................................4

    III. Ermilov Tried to Hide Assets in the Zama Platform...........................................................6

    IV. Ermilov Temporarily Reversed Transfer to Zama-Circle Wallet to Gain Credibility ......6

    V.   Joinder of All Class Members is Impracticable ................................................................6

**ARGUMENT**......................................................................................................................7

    I.   The Named Plaintiffs Meet the Rule 23(a) Factors.........................................................7
       A.   *A Class With Hundreds of Members is Sufficiently Numerous* ....................................8
       B.   *Common Questions of Law or Fact Exist Among Class Members* ..............................8
       C.   *The Named Plaintiffs' Claims are Typical of the Class Claims*...................................9
       D.   *The Named Plaintiffs are Able to Fairly and Adequately Protect Class Interests*........9

    II.  The Named Plaintiffs Meet the 23(b)(3) Requirements.......................................................11
       A.   *Common Questions of Law or Fact Predominate Among Class Members*.................11
       B.   *Class Action is a Superior Method for Fair and Efficient Adjudication*.....................12

    III. This Court Should Appoint the Undersigned as Class Counsel......................................13

**CONCLUSION**.................................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013)........................................................9

*Ambrosia v. Cogent Communs., Inc.*, 312 F.R.D. 544 (N.D. Cal. 2016)..............................8, 10

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ......................................7

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008)..........................................................................................................................................8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................................12

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)..........................................10

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) .........................................................12

*Labbe v. Town Sports Int'l*, Index No. 103948/2012 (Sup. Ct. N.Y. County)..........................11

*Lloyd v. Ubiqus Reporting Inc.*, Index No. 151499/2017 (Sup. Ct. N.Y. County)....................11

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .............................................8, 9

*Newton AC/DC Fund L.P. v. Wu,* 1:25-cv-6477-AS (S.D.N.Y.)................................................11

*Rational Special Situations Income Fund v. The Bank of New York Mellon*, 656501/2022 (Sup. Ct. N.Y. County)............................................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................................................9

*Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013) ...................................................12

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001).................................7, 13

**Rules**

Fed. R. Civ. P. 23(a)...................................................................................................................8

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...............................................................................................12

ii

# INTRODUCTION

Plaintiffs Newton AC/DC Fund, L.P. (the "Fund"), Patagon Management LLC ("Patagon"), Scallion Trading Ltd. ("Scallion"), and Joshua Fong ("Fong," and together with the Fund, Patagon, and Scallion, the "Named Plaintiffs"), respectfully submit this memorandum of law on their own behalf and on behalf of the proposed Class in support of their motion for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action, appointing the Named Plaintiffs as Class representatives, and appointing undersigned counsel as Class counsel. This memorandum cites the Amended Complaint, dated June 18, 2026, ECF Doc. 26 (the "Am. Complaint"), and the Declarations of Eric S. Meyer, dated June 5, 2026 ("Meyer PI Decl.," ECF Doc. 19-2) and July 24, 2026, ("Meyer Class Decl."), William H. Newman, dated July 24, 2026 ("Newman Decl."); and Rachel N. Rivers, dated July 24, 2026 ("Rivers Decl.").

# PRELIMINARY STATEMENT

This action seeks to recover digital assets worth more than $15 million from Defendant Maxim Ermilov and to distribute them among investors who rightfully own them.

The Named Plaintiffs and others are in the same position: Together, they hold over 91% of the outstanding tokens of a cryptocurrency called Overnight ("OVN"). As a governance token, OVN provides token holders with voting rights to govern the distribution of certain assets (the "Treasury").

A majority of OVN token holders voted to distribute the Treasury. Thus, each token holder is entitled to its pro rata share of more than $15 million in digital assets held in the Treasury. Instead of honoring the vote, Ermilov attempted to abscond with the assets for himself.

Accordingly, the Named Plaintiffs, on their own behalf and on behalf of all OVN holders, now respectfully ask the Court to certify a Class for the prosecution of this action, name

1

the Named Plaintiffs as Class representatives, and to designate the undersigned as Class counsel. The Court should grant the motion because the class certification prerequisites set forth in Rule 23(a) and 23(b)(3) are met here.

First, the Class is numerous: public blockchain records reflect that there are at least hundreds, and perhaps thousands, of people and entities that hold OVN tokens. It would be impracticable for them all to join as separate plaintiffs.

Second, there are questions of law or fact common to the Class. Here, most of the factual questions are common to all Class members: The vote to distribute assets affects all Class members, and the underlying assets are being held by the same defendant. Similarly, the legal questions are common, too: whether ownership of OVN entitles Class members to a pro rata share of Treasury assets, and whether Ermilov fraudulently transferred the Treasury assets to avoid distribution.

Third, the Named Plaintiffs' claims are typical of the Class's claims. The Named Plaintiffs seek the same relief as all other Class members: to remedy the breach of contract by Ermilov, to recover Ermilov's fraudulent transfers of Treasury assets, and to establish a constructive trust over those assets.

Fourth, the Named Plaintiffs will fairly and adequately protect the interests of the whole class. In particular, the Named Plaintiffs have spent several months investigating and pursuing this litigation and wish to represent the interests of the Class. Counsel includes experienced complex commercial litigators who have represented multiple parties in class action litigation.

And finally, the questions of law or fact common to the Class predominate over any questions affecting only individual members. The questions unique to individual members merely require the establishment of their identities and the determination of the number of OVN tokens each hold.

**FACTUAL BACKGROUND**

I.    Ermilov Made an Agreement With Investors to Sell OVN

Ermilov created a cryptocurrency platform called Overnight Finance (the "Platform"). Meyer PI Decl. ¶ 5.  The Platform allowed users to invest in various cryptocurrencies in a manner similar to buying shares in a money market mutual fund.  *Id.*

Ermilov also created OVN, a cryptocurrency.  *Id.* ¶ 6.  He promoted and sold OVN tokens by expressly promising that purchasers would obtain rights to control the profits generated by the Platform, which he held in certain cryptocurrency wallets (collectively, the "Treasury"), including to direct a distribution of those profits.  *Id.*  In particular, he promised that OVN tokens were "governance" tokens that conferred upon purchasers the right to vote on what to do with Treasury assets.  *Id.*

On November 6, 2024, Ermilov wrote on Discord that, "you can buy 51% of OVNs and vote to have [the Treasury] distributed."  *Id.* ¶ 7.

Ermilov made other statements consistent with the representation that OVN tokens were worth a share of the Treasury.  *Id.* ¶ 8.  For example, on April 10, 2024, he wrote, "Sustainable growth of [the Treasury] is the only way for us to keep growing OVN price," meaning that growth in the Treasury was correlated with a corresponding increase in the price of OVN tokens. *Id.*

Upon information and belief, Ermilov authored an X thread on November 28, 2023, from the official Overnight Finance X account, that stated: "In summary: OVN is a governance token of the Overnight ecosystem that provides real value for OVN holders. . . . It's backed by protocol revenue and has mechanics to increase demand and buying pressure."  *Id.* ¶ 9.

Ermilov was also clear what assets were included in the Treasury.  *Id.* ¶ 10.  He referred to it as "POL" or "protocol owned liquidity."  *Id.*  This refers in the cryptocurrency industry to the assets a cryptocurrency platform maintains for transactions with users.  *Id.*  For the

3

Overnight Finance protocol, Ermilov disclosed, through his statements and actions, that the Treasury assets were held in the following wallets (the "Treasury Wallets"):

- 0x898137400867603e6d713cbd40881dd0c79e47cb;

- 0xf02d9f19060ee2dd50047dc6e1e9ebac9ba436fe;

- 0x784cf4b62655486b405eb76731885cc9ed56f42f;

- 0xe497285e466227f4e8648209e34b465daa1f90a0; and

- 0x9030d5c596d636eefc8f0ad7b2788ae7e9ef3d46.

*Id*. The last three of these addresses were explicitly listed as "Treasury Addresses" in a funding application submitted by Ermilov to the Arbitrum Foundation in March 2024. *Id.*

The Plaintiffs purchased OVN tokens in the manner Ermilov designed: using the Platform's automated trading accounts (which are called "liquidity pools" in the cryptocurrency industry) that Ermilov himself substantially seeded and owned. *Id.* ¶ 11. Specifically, Ermilov deployed a smart contract, a computer program stored on a blockchain which can also hold cryptocurrency, on each of the Base and Optimism blockchains on September 19 and 20, 2023, with the addresses 0x61366A4e6b1DB1b85DD701f2f4BFa275EF271197 and 0x844d7d2fca6786be7de6721aabdff6957ace73a0, respectively. *Id.* Ermilov deposited approximately 23,000 of the total supply of 1 million OVN tokens into the two smart contracts. *Id.* The Named Plaintiffs together used these smart contracts to purchase over 60,000 OVN tokens, which is over 6% of all OVN tokens in existence. Meyer Class Decl. ¶ 3.

II.    Ermilov Breached the Agreement and Stole Treasury Assets

The Plaintiffs as a class own the vast majority of OVN tokens, over 91%. Some class members participated in a vote on May 4, 2026, to distribute the Treasury assets (the "Proposal"). Meyer PI Decl. ¶ 12. By early morning on May 11, 2026, Pacific Time, holders of more than half of the outstanding amount of OVN tokens had voted in favor of the Proposal,

4

with no votes against.  *Id*.  The voting period closed on June 3, 2026, successfully passing the Proposal.  *Id*.

In response to the vote, Ermilov repudiated his previous representations that the Investors could vote to distribute the Treasury to themselves on a pro rata basis.  Just before the vote crossed the 50% threshold on May 11, 2026, Ermilov removed a substantial portion of the assets from the Treasury Wallets (the "May 11 Removals").  *Id*. ¶ 13.  In all, Ermilov moved over $15.77 million in assets out of the Treasury Wallets into a newly created wallet (the "New Wallet").  *Id*.  Of these assets, roughly $14 million were bridged to the Ethereum blockchain, and the vast majority of those assets were deposited in three separate smart contracts deployed and managed by the Zama protocol, which were designed to enhance secrecy and allow for confidential transfers to other wallets.  *Id*.  One of these Zama smart contracts (the "Zama-Circle Wallet") received a deposit of approximately 12.5 million USDC tokens from the New Wallet.  *Id*.  The second of these Zama smart contracts (the "Zama-Tether Wallet") received a deposit of approximately 91,000 USDT tokens from the New Wallet.  *Id*.  The third of these Zama smart contracts (the "Zama-ETH Wallet," and together with the Zama-Circle Wallet and the Zama-Tether Wallet, the "Zama Wallets") received a deposit of approximately 20.32 WETH tokens (approximately $47,500 of market value at the time) from the New Wallet.  *Id*.

Ermilov acknowledged the Investors' entitlement to the funds and his misconduct.  *Id*. ¶ 14.  Ermilov spoke to the Investors' entitlement in a May 14, 2026, Discord post, writing that, "a group of people took control of 50+% of OVNs, so they control the protocol now."  *Id*.  In the same post, he admitted that he only "told [Investors] to get to 51%" to "drive the price [of OVN tokens] up to 7-10 USD."  *Id*.  But now that Investors have done so, Ermilov claims that Investors are not entitled to the Treasury assets.  *Id*.

III.    Ermilov Tried to Hide Assets in the Zama Platform

Ermilov's transfers to the Zama Wallets frustrated the Investors' ability to trace the digital assets in which they have an interest.  Meyer PI Decl. ¶ 15.  Once assets have been transferred to one of the Zama Wallets, a user may conduct confidential transfers within the Zama protocol that hide the recipient and amount of the transfer.  *Id.*  The Named Plaintiffs were able to trace the Treasury assets within the Zama-Circle Wallet only due to the lack of third-party activity and minimal net deposits of less than 114,000 USDC (of which 97,000 USDC was deposited in one transaction by Zama itself) prior to Ermilov's transfer of about 12.5 million USDC tokens.  *Id.*  The Named Plaintiffs are unable to trace the Treasury assets within the Zama-Tether Wallet and Zama-ETH Wallet because there were far more deposits in them prior to Ermilov's transfers and there has been far more third-party activity in them since. *Id.*

IV.    Ermilov Temporarily Reversed Transfer to Zama-Circle Wallet to Gain Credibility

After the Named Plaintiffs sought and obtained a temporary restraining order from this Court, Ermilov agreed to temporarily reverse the May 11 Removals by depositing those assets into the Treasury Wallets and the New Wallet and to refrain from any further transfers of Treasury Wallets and New Wallet assets pending the outcome of a preliminary injunction motion.  Meyer PI Decl. ¶ 16.

V.    Joinder of All Class Members is Impracticable

The Named Plaintiffs together own over 67,000 OVN tokens, which is more than 6.7% of all existing OVN tokens.  Meyer Class Decl. ¶ 3.  The Fund owns approximately 37,200 OVN tokens.  *Id.*  Patagon owns approximately 22,000 OVN tokens.  *Id.*  Scallion owns approximately 3,700 OVN tokens.  *Id.*  Fong owns approximately 5,100 OVN tokens.  *Id.*

Other members of the Class own approximately 850,000 more OVN tokens.  *Id.* ¶ 4. According to public blockchain records, over 20,000 cryptocurrency wallets hold OVN tokens

6

on the Base blockchain alone. *Id.* The number of wallets may greatly exceed the number of Class members because it is common for investors to control multiple wallets. *Id.* Even so, the Named Plaintiffs estimate that the number of distinct people and entities who hold OVN tokens is in the hundreds or even thousands. *Id.*

### ARGUMENT

Rule 23 governs class actions. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). To obtain class certification, the Named Plaintiffs must show that they meet "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Id.*

When considering a motion for class certification, the Court's analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013). But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

The relevant factors are set forth in Rule 23(a) and 23(b)(3). And they are met in this case.

I.    The Named Plaintiffs Meet the Rule 23(a) Factors

The relevant factors set forth in Rule 23(a) are:

1.    the class is so numerous that joinder of all members is impracticable;

2.    there are questions of law or fact common to the class;

3.    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.    the representative parties will fairly and adequately protect the interests of the class.

7

Fed. R. Civ. P. 23(a).  Courts typically refer to these factors informally as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).  Each factor is met here.

### A.      *A Class With Hundreds of Members is Sufficiently Numerous*

"While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."  *Ambrosia v. Cogent Communs., Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008)).

Here, public blockchain records reflect that likely hundreds or thousands of people and entities hold OVN tokens.  Meyer Class Decl. ¶ 4.  According to public blockchain records, there are over 20,000 unique cryptocurrency wallets that hold OVN tokens on the Base blockchain.  *Id.*  To be sure, the number of distinct wallets exceeds the number of Class members because it is common for some investors to control more than one wallet.  *Id.*  Nevertheless, the Named Plaintiffs estimate that the number of distinct people and entities who hold OVN tokens is well in the hundreds.  *Id.*  Accordingly, the numerosity threshold is met here.

### B.      *Common Questions of Law or Fact Exist Among Class Members*

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'"  *Mazza*, 666 F.3d at 588 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  In other words, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'"  *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 350).

8

Here, the central issues are the same for all class members: First, did a contract exist between OVN token holders and Ermilov?  Second, does ownership of OVN tokens entitle them to a pro rata share of Treasury assets?  And third, are the May 11 Transfers voidable pursuant to the Uniform Voidable Transactions Act.  Because the resolution of those questions is common to all class members, the commonality factor here is met.

C.    *The Named Plaintiffs' Claims are Typical of the Class Claims*

The typicality test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, the Named Plaintiffs' claims arise from the exact issue underlying all class claims: each plaintiff's ownership of OVN tokens and the corresponding pro rata ownership interest in Treasury assets.  Accordingly, the Named Plaintiffs' claims are typical of those of other Class members.

D.    *The Named Plaintiffs are Able to Fairly and Adequately Protect Class Interests*

"The adequacy inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class."  *Ambrosia*, 312 F.R.D. at 555 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).

To begin, there is no conflict of interest between the Named Plaintiffs and other OVN token holders.  Their interests are aligned with that of other holders: each Named Plaintiff seeks a pro rata share of Treasury assets based on the amount of OVN tokens it holds and the ability of other OVN token holders to obtain the same.  And because the Named Plaintiffs are seeking pro rata shares, there is no conflict in which any OVN token holder needs to seek priority over another.

9

Next, the Named Plaintiffs are very familiar with this dispute. They have been investigating the issues arising in this litigation for several months, including by outreach to other affected parties. Meyer Class Decl. ¶ 5. Moreover, the relevant information is largely publicly available and not in dispute since public blockchain records detail the relevant transfers of cryptocurrency and most of Ermilov's relevant statements were made in a publicly accessible Discord server. *Id.* Additionally, the Named Plaintiffs and their principals are experienced cryptocurrency investors who are very knowledgeable about the relevant issues. *Id.*; Newman Decl. ¶ 3.

Finally, undersigned counsel is capable of adequately representing the class. William Newman has represented clients in connection with multiple class action lawsuits. These include *Lloyd v. Ubiqus Reporting Inc.*, Index No. 151499/2017 (Sup. Ct. N.Y. County) and *Labbe v. Town Sports Int'l*, Index No. 103948/2012 (Sup. Ct. N.Y. County). Newman Aff ¶ 4. Moreover, Newman has represented clients in numerous cryptocurrency and investment disputes, including *Newton AC/DC Fund L.P. v. Wu,* 1:25-cv-6477-AS (S.D.N.Y.); *Scallion Trading Ltd. v. Qin,* 1:25-cv-2476-JAM (E.D.N.Y.); and *Rational Special Situations Income Fund v. The Bank of New York Mellon*, 656501/2022 (Sup. Ct. N.Y. County). *Id.* ¶ 5.

Furthermore, Rachel Rivers is a seasoned class action litigator who brings deep experience defending complex, multi-jurisdictional matters. Rivers Decl. ¶ 3. Since joining Pierson Ferdinand LLP in October 2024, she has served as lead defense counsel, both individually and as part of coordinated defense teams, in more than 15 class action litigations across the United States. *Id.* Her practice is particularly well-suited to technically complex disputes, having represented class defendants in matters requiring detailed forensic investigations, and she has substantial experience counseling clients in regulated industries, including banking and healthcare, where regulatory issues and consumer protection are especially significant. *Id.* Rivers is admitted to practice in all California District Courts and

10

began her career trying matters in the Northern District of California, giving her firsthand knowledge and experience with this venue.  *Id.* ¶ 4.

II.    The Named Plaintiffs Meet the 23(b)(3) Requirements

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A.    *Common Questions of Law or Fact Predominate Among Class Members*

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).  "To gain class certification, Plaintiffs need to be able to allege that their damages arise from a course of conduct that impacted the class. But they need not show that each members' damages from that conduct are identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

As set forth above in Section I.B, *supra* at 8-9, the central issues of this dispute establish the commonality requirement.  Those issues are whether a contract exists between OVN token holders and Ermilov, whether ownership of OVN tokens entitles them to a pro rata share of Treasury assets, and whether the May 11 Transfers are voidable pursuant to the Uniform Voidable Transactions Act.   The questions unique to individual members include the establishment of their identities and the determination of the number of OVN tokens they each hold.

B.    *Class Action is a Superior Method for Fair and Efficient Adjudication*

Rule 23(b)(3) sets forth four relevant factors to guide the superiority determination:

> 1.    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> 2.    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> 3.    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> 4.    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190.

Each of the factors weighs in favor of certification.  The Named Plaintiffs have been in contact with many prospective Class members and have had no indication that any Class member seeks individual control of their case.  Meyer Class Decl. ¶ 6.  Furthermore, individual lawsuits would be inefficient, costly, and could lead to inconsistent verdicts.

The Named Plaintiffs are unaware of any parallel litigation raising the claims in this action, so there is no risk that certification would render wasteful any previously expended judicial resources.  *Id.* ¶ 7.

Concentrating the claims in a single forum is appropriate to protect the rights of all class members.  Given that Ermilov is a foreign national who does not reside in the United States, individual plaintiffs may encounter difficulty obtaining personal jurisdiction over the Defendant in another venue.

Classwide treatment is manageable because the Named Plaintiffs propose a pro rata distribution of any recovery to all Class members based on the amount of OVN tokens each member holds.  *Id.* ¶ 8.

12

III.     This Court Should Appoint the Undersigned as Class Counsel

For the reasons articulated in Section I.D, *supra* at 9-11, this Court should appoint the Named Plaintiffs as Class representatives and undersigned counsel as Class counsel.

### CONCLUSION

For all the above reasons, the Named Plaintiffs respectfully requests that the Court grant their motion for class certification, appointing the Named Plaintiffs as Class representatives, and appointing William Newman, Newman Litigation PLLC, Rachel N. Rivers, and Pierson Ferdinand LLP as Class counsel, and grant any other relief the Court deems just.

Dated: Brooklyn, New York
     July 24, 2026

**NEWMAN LITIGATION PLLC**

/s/ *Tara Q. Higgins*

William H. Newman
(*appearing pro hac vice*)
Tara Q. Higgins
(*appearing pro hac vice*)
33 Nassau Avenue, Second Floor
Brooklyn, New York 11222
Phone: (718) 218-3360
Email: will@newmanl.com
       tara@newmanl.com

**PIERSON FERDINAND LLP**
Rachel N. Rivers
SBN 291283
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone:  415.907.4972
*rachel.rivers@pierferd.com*

*Attorneys for the Named Plaintiffs and
Proposed Class Counsel*

13