UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWTON AC/DC FUND, L.P., et al., Plaintiffs, v. MAXIM ERMILOV, Defendant. | Case No. 5:26-cv-05055-PCP **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** Re: Dkt. No. 19 |

Plaintiffs Newton AC/DC Fund, Patagon Management LLC, Scallion Trading Ltd., and Joshua Fong bring this class action complaint against defendant Maxim Ermilov. Plaintiffs allege that Ermilov breached a contract and fraudulently transferred over $15 million in cryptocurrency. They seek a constructive trust over the assets at issue. Plaintiffs now move for a preliminary injunction prohibiting Ermilov from transferring those assets pending resolution of this action. For the following reasons, the Court denies the motion.

**BACKGROUND**

Ermilov is the founder of Overnight, a company located and domiciled in the Cayman Islands. Overnight developed and launched the Overnight Protocol, a system of smart contracts. The protocol is governed by the agent of these smart contracts. Buying into the protocol is akin to buying into a money-market mutual fund: Any dividends generated by the protocol are deposited into certain cryptocurrency wallets, also referred to as the treasury.

The protocol created and hosts USD+ (a stablecoin) along with the OVN token, which—among other benefits—grants holders the right to "govern" the protocol by changing the agent. On November 6, 2024, Ermilov posted on Discord that a holder of 51% of all OVN tokens could "vote to have POL [protocol-owned liquidity] distributed." The named plaintiffs own

United States District Court
Northern District of California

approximately 60,000 OVN tokens, or 6% of all existing OVN.

On May 4, 2026, an anonymous person proposed to distribute what it termed "[t]reasury assets." Under the proposal, "the entire treasury value" would be distributed to "OVN token holders on a pro-rata basis." By the morning of May 11, 2026, holders of more than half of the outstanding OVN tokens had voted to distribute the assets. Shortly before the vote crossed the 50% threshold, Ermilov moved $15.77 million out of six identified wallets into a newly created one. From there, roughly $14 million was deposited into three separate smart contracts.

Plaintiffs filed the instant action on May 28, 2026 and immediately moved for a temporary restraining order freezing the assets at issue. Voting officially closed a week later, on June 3, 2026, and the proposal to distribute the assets passed. That same day, the parties stipulated to a restraining order pursuant to which Ermilov would reverse the May 11 withdrawals and refrain from any further transfers pending a decision on plaintiffs' renewed motion for a preliminary injunction.

Plaintiffs now seek a preliminary injunction prohibiting Ermilov from transferring the assets. Their suit is premised on the allegation that Ermilov "promise[d]" that OVN tokens would confer ownership of the treasury, and that he "breached" that "agreement" when he transferred assets out of the identified wallets into a new one. Because plaintiffs do not establish that their suit is likely to succeed on the merits or that the balance of hardships favors them, the Court denies the motion.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must establish that (1) the plaintiff "is likely to succeed on the merits," (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [the plaintiff's] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell*

*Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

**ANALYSIS**

As an initial matter, this Court has authority to grant the requested remedy. In between filing their motion for a preliminary injunction and their reply to the opposition, plaintiffs submitted an amended complaint. The original complaint only asserted fraudulent transfer and breach of contract claims. But a court cannot issue a preliminary injunction pending adjudication of a contract claim for money damages. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). The amended complaint adds a named plaintiff, removes any allegations concerning Circle (the entity that had the ability to freeze the funds at issue), and alleges that Overnight Finance is a shell corporation for Ermilov's own affairs. It also adds two causes of action (constructive trust and fraudulent transfer under Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(a)), along with modifying its original fraudulent transfer and breach of contract claims.

If a plaintiff amends her complaint after submitting her motion for a preliminary injunction, the amended complaint is the operative pleading. *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1273 (9th Cir. 2021). Because the amended complaint includes a new claim for constructive trust, the Court has authority to issue the requested preliminary injunction. *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) (holding that *Grupo Mexicano* permits the issuance of preliminary injunctions freezing assets where cases include "fraudulent conveyances, and cases in which equitable relief is sought"). Plaintiffs, however, fail to establish a right to the preliminary relief they seek.

**I. Class Certification**

Plaintiffs assert their claims on behalf of a proposed class of "all people and entities who currently hold OVN cryptocurrency tokens." But "[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis." *M.R. v. Dreyfus*, 697 F.3d 706, 738 (9th Cir. 2012) (citation omitted). While a court may grant provisional class certification when considering a preliminary injunction, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), such a grant cannot occur without an underlying motion providing evidence that the requirements for certification under Rule 23 are satisfied. Plaintiffs submitted no such motion

here. Therefore, even if the Court were to grant the preliminary injunction, the relief could extend only to the named plaintiffs. *Nat'l Ctr. for Immigrants Rts., Inc. v. I.N.S.*, 743 F.2d 1365, 1371 (9th Cir. 1984).

## II. *Winter Factors*

A motion for a preliminary injunction is an evidence-based motion. Although the evidence standard is lower than for motions granting ultimate relief, the moving party must show—based on a preponderance of the evidence—that they are likely to succeed on the merits of their claims. *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 403 (9th Cir. 2016). No such showing has been made here.

First, plaintiffs assert that Ermilov and Overnight are one and the same but provide no evidence to support their argument. They argue that his control over the wallets—as evidenced by the May 11 transfers—along with the "comingling" of the funds is enough to pierce the corporate veil between the company and its founder. They cite to a declaration by a partner in one of plaintiffs' firms that describes the moving of the treasury assets, but no more. There is no explanation of the provenance of the assets in the wallet, nor anything that could help this Court conclude that Ermilov was not acting as an officer of the corporation Overnight.[1]

Even if the Court were to conclude that plaintiffs have named the correct defendant, their claims are riddled with other issues. For example, their case is premised on Ermilov's November 6, 2024, post on Discord stating that a majority of OVN holders could vote to have the protocol owned liquidity distributed. Yet in their moving papers, they replace "protocol owned liquidity" with "treasury assets." They offer no evidence sufficiently explaining why the two terms are interchangeable.

Next, although plaintiffs provide evidence that indicates the existence of documents on the Overnight website explaining how OVN tokens may be used to govern the protocol, they never

[1] Plaintiffs provide three Basescan links as evidence of the "[p]ublic blockchain records" for certain wallet addresses. They fail to attach any expert declaration tracing the different sources of the assets within those wallets or otherwise explaining the records. Perhaps some answers to the Court's questions could be provided by reviewing the Basescan links, but it is not the Court's role to plumb the record for evidence that might support plaintiffs' position. *U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1138 (9th Cir. 2023).

provide the documents or otherwise explain why those documents are not dispositive. During the hearing on the motion, plaintiffs argued that because they purchased OVN through a liquidity pool instead of directly from the website, they were not subject to the governance terms on the website. But if those documents describe the governance rights provided to all holders of OVN tokens, regardless of the manner in which the tokens were purchased, then they would be highly relevant to the issue before the Court.

Further, plaintiffs' breach theory requires an agreement, which they describe as "Ermilov['s] promise[] to obey token holder votes if investors purchased a majority of the tokens he created." Plaintiffs contend that the consideration they provided in reliance of this promise was their purchase of OVN tokens. But the record is devoid of evidence, or even allegations, showing when plaintiffs purchased the tokens. What little evidence has been provided shows that the purchases could have occurred more than a year before Ermilov's purported offer. And even if their purchases were made after the Discord post, Ermilov's power to enter into a binding agreement regarding the Overnight Corporation's assets through the mere posting of such a statement is unclear. Without more, the Court cannot find that consideration was exchanged and a contract was formed or that the website's governance documents did not apply to plaintiffs' tokens and/or were properly supplanted by Ermilov's post.

These are just some of the evidentiary problems with plaintiffs' theory. When considering these problems in combination, the Court cannot find a likelihood of success on the merits.

Even the less stringent merits evaluation under the "serious questions" test cannot save plaintiffs' motion because the balance of hardships does not sharply tip in plaintiffs' favor.

Plaintiffs' evidence regarding the balance of hardships is intertwined with their argument for irreparable harm. Plaintiffs argue that without a preliminary injunction, Ermilov is likely to abscond with their assets. Notably, however, in many of the matters concerning fraudulent transfers of cryptocurrency where courts have found a likely risk of irreparable harm, the defendants have not appeared. *See e.g.*, *Trikha v. Doe*, No. 5:26-CV-04706, 2026 WL 1395941, at *5 (N.D. Cal. May 18, 2026); *Jacobo v. Doe*, No. 1:22-CV-00672-DAD-BAK (BAM), 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022); *Heissenberg v. Doe*, No. 21-CIV-80716, 2021 WL

8154531, at *1 (S.D. Fla. Apr. 23, 2021); *see also JustM2J LLC v. Brewer*, No. 2:25-CV-00380-DAD-SCR, 2025 WL 435827, at *8 (E.D. Cal. Feb. 7, 2025) (noting that courts considering irreparable harm in cryptocurrency fraud cases "look[] to factors such as whether the defendants' identities are known, whether the fraudulent scheme is ongoing, and the defendants' conduct in the litigation."). In contrast, Ermilov appeared, preemptively offered to return the funds before stipulating to a temporary restraining order requiring him to do so, and has so far obeyed all court orders. Aside from the possible dissipation of their assets, plaintiffs offer no further argument regarding the balance of equities. Therefore, plaintiffs fail to show that they will be harmed by the denial of the injunction. By contrast, the issuance of an injunction would freeze Overnights assets that may otherwise be used to pay company salaries and develop the company's products. *See Int'l Jensen v. Metrosound U.S.A.,* 4 F.3d 819, 827 (9th Cir.1993) ("In evaluating the balance of hardships a court must consider the impact granting or denying a motion for a preliminary injunction will have on the respective enterprises.").

Under these circumstances, the balance of hardships does not tip sharply in plaintiffs' favor, precluding the Court from granting a preliminary injunction under the "serious questions" standard.

**CONCLUSION**

For the foregoing reasons, the motion for a preliminary injunction is denied. Defendant's response to the amended complaint is due within thirty days of the issuance of this order. Fed. R. Civ. P. 15(a)(3).

**IT IS SO ORDERED.**

Dated: August 3, 2026

P. Casey Pitts
United States District Judge